**United States District Court**
**Eastern District of Michigan**
**Southern Division**

JAMES G. STOCKARD, JR.,

        Plaintiff,                    Case No. 06-12531

vs.                                      Honorable Chief Judge Bernard A. Friedman
                                         Honorable Steven D. Pepe

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
=========================/

## REPORT AND RECOMMENDATION

**I.    BACKGROUND**

James G. Stockard brought this action under 42 U.S.C. §405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed Motions for Summary Judgment[1], which have been referred for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and (C) (Dkt. #6). For the following reasons, it is Recommended that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

    **A.    Procedural History**

Plaintiff filed an application for SSI on April 30, 2003, alleging disability, beginning February 11, 1997, due to carpal tunnel syndrome as well as pain in the back, neck, shoulders,

---

[1] Plaintiff filed a "New Medical Information Report" on December 15, 2006 (Dkt. #12), which has been construed by this court as Plaintiff's Motion for Summary Judgment (Order Withdrawing Order to Show Cause, Dkt. #14).

elbows, knees, ankles and hips (R. 44-45, 52).  Plaintiff's request was denied upon initial review (R. 30).  An administrative hearing was held on October 31, 2005, at which Plaintiff was represented by an attorney (R. 12).  On November 21, 2005, Administrative Law Judge (ALJ) John L. Christensen issued an opinion denying Plaintiff's application (R. 12-19).[2]  The Appeals Council denied Plaintiff's request for review (R. 4-6).

### B. Background Facts

#### 1. Plaintiff Testimony

*Disability Application*

Plaintiff suffers from pain in his back, neck, shoulders, knees, elbows, wrists, ankles and hips (R. 52).  He has experienced these problems since October 1991.  He claims he has been unable to work since February 1997 (R. 62).  He was employed briefly in 2002 as an environmental technician. He quit this work because of too much pain, and he claims a doctor ordered him to stop working.  Prior to his work as an environmental technician, his last employment was from October 1990 until June 1991 as an assistant manager at a restaurant (R. 80).  He was also a chairman and a board member for Vista, a day program for mentally handicapped individuals.

Plaintiff is able to cook, clean, and do laundry for himself, and he takes walks for exercise almost every day (R. 73).

---

[2] The ALJ noted in his decision that Plaintiff had filed four previous SSI applications (in 1991, 1994, 1997, and 2000), and all four applications had been denied (R. 12).  Plaintiff was denied an appeal by the Appeals Council on the first three applications.  Plaintiff did not seek review by the Appeals Council on the fourth denial of his application.  The ALJ found that although Plaintiff submitted new evidence in the form of medical records not previously considered, there was no new and material evidence that was different from the previous decisions that Plaintiff was not disabled.  He therefore concluded that those decisions were final.

### *Testimony at Hearing*

Plaintiff was born July 19, 1959, and was forty-six at the time of his hearing (R. 115). He is a high school graduate and went to college for three years. He left college after having exhausted his medical leaves and being unable to complete his studies (R. 115-16).[3] Plaintiff also completed vocational training to become a certified environmental technician, and obtained an operator license and audio visual license from the Army (R. 116).

Plaintiff testified he is not working now due to extreme pain in his back. He has been dealing with pain in his back since 1991 (R. 119), and he has only slightly improved since then (R. 120). He stated that the pain occurred "all the time." On a scale of one to ten with ten being the highest, he rated his pain on an average day at a six or seven. He also has pain in his neck, shoulders, wrists, elbows and knees. He characterized the pain as sharp and stabbing, and he takes Lexapro and muscle relaxers to mitigate the pain (R. 119). He was prescribed Tylenol 4, which was discontinued by his physician when it lost its effectiveness (R. 120). Plaintiff had participated in physical therapy, with the last visit occurring around two to three months prior to the hearing (R. 121). He also underwent "TENS" therapy [transcutaneous electrical nerve stimulation]. He acknowledged that the physical therapy helped a "little bit."

Plaintiff has had difficulty a few times in the past with lifting a Styrofoam cup of water or screwing in a light bulb (R.121). Although he pointed out that his limitations vary frequently, he tries not to exceed lifting ten pounds if possible. Low back pain limits Plaintiff to sitting for approximately one hour at a time (R. 122). He uses a cushion for his lower back and usually has to "shift around a bit" when seated.

---

[3]The transcript says he could not finish his education "for physical reasons," but he may have said "for fiscal reasons" related to his medical leave. His disability report is unclear as to the time of his college attendance and his limited work experience as a roofer (R. 53, 58).

Plaintiff estimated that he can stand for around thirty to forty-five minutes at a time. He can also walk approximately one mile, which he attributes to the fact that he used to jog (R. 122). Plaintiff also experiences leg spasms once or twice a month, which are alleviated to some degree with muscle relaxants. Plaintiff fell four or five times, his knee had begun to swell and a doctor concluded that it was "fluid or somethin' on [his] knee and bursitis" (R. 122). It is unclear from Plaintiff's testimony if the doctor took any action thereon. Afterward, Plaintiff experienced pain like "someone was touchin' [him] in the back of the calf with a cattle prodder [INAUDIBLE]", and would fall when walking (R. 122). Thereafter, he would walk and feel pain in his knee and then fall down. Even though both knees are causing him problems, he chooses not to use a cane because he's not used to it, and he "live[s] in downtown Flint. That'd be like paintin' a target on [his] back" (R. 123).

Plaintiff stated that he has some problems doing everyday activities due to his back pain (R. 123). As an example, he stated that he recently delayed washing his dishes do to back pain. He enjoyed playing cards, but recently had to quit when dealing out twenty-eight cards from the deck made his arms hurt, and he "had to just shake it out" (R. 123).

The following question was then posed to Plaintiff:

> I want you to assume you were offered a real easy, unskilled, low-stress sit down type job. Let's say parking lot attendant where you sit around all day and take money from people when they're driving by. You have the option to sit or stand whenever you want, but there wouldn't be any extended periods of standing or no walking or lifting over 10 pounds, but you had to do this job eight hours a day, 40 hours a week, on a consistent basis. You think you could handle a job like that?

Plaintiff responded that he would not, because he could not sit for longer than a couple of hours (R. 125).

4

**2.     Medical Evidence**

*Dr. Kovan's Consultative Evaluation*

Dr. Richard Kovan performed a consultative evaluation of Plaintiff for the Social Security Administration on July 16, 2003 (R. 95-95). Plaintiff stated he had a history of chronic back pain, constant nonradiating neck and low back pain, occasional numbness and tingling in feet and low back spasms (R. 94). He reported intermittent bilateral shoulder pain (occasionally radiating to the elbows) and occasionally wrist and bilateral knee pain. His past medical history was significant for hypertension, tonsillectomy, adenoidectomy and a right bunionectomy. Plaintiff also stated he had not actually been diagnosed with carpal tunnel syndrome by a doctor. He walks without an assistive device, and he is independent with activities of daily living (R. 94).

Upon examination, Plaintiff had a normal gait pattern, was able to heel and toe walk, and could squat and come back to a standing position (R. 95). He had normal strength to resisted shoulder abduction, elbow flexion and extension, wrist dorsiflexion, hand intrinsic musculature, knee flexion and extension, dorsiflexion and great toe extension. Muscle stretch reflexes were 2+ and symmetrical at the biceps, triceps, brachioradialis and patellae, and 1+ at the Achilles. He had full range of motion in upper and lower extremities, the lumbrosacral and cervical spine. There was no gross evidence of muscle atrophy, deformity, erythema, edema or effusion. He had negative straight leg raising in both the seated and supine positions. The doctor concluded that there was no evidence of a neurological or orthopedic impairment, and Plaintiff had no physical limitations (R. 95, 98).

### *Hurley Medical Center*

Plaintiff was treated several times at the Hurley Medical Center from June 1990 until April 2005 (R. 92). Hurley's medical records provide a summary of visits between June 1990 and March 2002. The summary indicates Plaintiff visited Hurley several times for back, neck and knee pain during this time period. There are no medical records for the time period between April 2002 and June 2004. A request to Hurley Medical Center for records during this time period came back indicating that there were no records for the Plaintiff during this period (R. 91). The medical records between June 2004 and April 2005 are somewhat illegible. It appears as though Plaintiff visited several times during this time period, beginning June 29, 2004 when Plaintiff was treated for chronic back pain. During this visit he was able to rise out of his chair easily and he got on and off the exam table without difficulty (R. 107). On September 21, 2004, Plaintiff was treated for pain in his shoulders and knees (R. 105). On October 19, 2004, Plaintiff was treated for chronic back pain and hypertension (R. 104). He stated that he had not been sleeping well because of the pain. Plaintiff reported that he had tried physical therapy and had seen a chiropractor, but the only thing that helped was pain medication. On January 25, 2005, Plaintiff was treated for chronic back pain along with an injury he suffered to his calf (R. 103). At this visit Plaintiff's hypertension was noted as "controlled". On April 12, 2005, Plaintiff was again treated for pain in his back (R. 101). During this visit he reported that he was very happy with the physical therapy he had been doing because the pain was much better. It was also again noted that his hypertension was "controlled". There are no medical records after April 2005.

### 3. **Vocational Evidence**

Mary Williams served as the vocational expert (VE) in this matter (R. 125). The ALJ asked VE Williams to consider a hypothetical person of Plaintiff's age, education, and work

experience, with the following residual functional capacity (RFC): light work with no use of either lower extremity for pushing and pulling, including use of foot controls; only occasional climbing ramps and stairs; no climbing ropes, ladders, or scaffolds; able to perform simple routine tasks in a low-stress environment, meaning normal changes in the workplace, with no more than occasional contact with the general public (R. 127).[4]  VE Williams provided the following examples of work this hypothetical person could perform: inspector, 6,000 jobs; machine operator, 8,000 jobs; and assembler, 18,000 jobs (R. 127).

The ALJ then asked VE Williams to assume the same individual in the previous hypothetical, but with the following additional limitations: as a result of pain and fatigue secondary to loss of sleep due to pain, the individual cannot sustain sufficient concentration, persistence and pace to perform simple routine tasks on a regular continuing basis, meaning eight hours a day, five days a week, 40 hours a week (R. 128).  VE Williams stated that there would be no jobs that such an individual could perform.

### 4. ALJ Christensen's Decision

ALJ Christensen found that Plaintiff's low back pain and shoulder pain, were "severe" impairments within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (R. 14).

Utilizing Part B of the functional evaluation for mental impairments, the ALJ found that Plaintiff experienced a "mild" restriction of activities of daily living and "mild" difficulties in maintaining social functioning as a result of his mental impairments.  He also found that Plaintiff

---

[4]Although several words in this portion of the transcript were inaudible to the transcriber and, therefore, missing, the undersigned has inferred some of the missing words from the parallel language in RFC findings in the ALJ's decision (R. 18).

had "mild" deficiencies of concentration, persistence or pace, which result in a failure to complete tasks in a timely manner. Further, ALJ Christensen found Plaintiff's impairment resulted in "no" episodes of decompensation of extended duration and the criteria contained in Part C of the functional evaluation for mental impairments were not satisfied (R. 15).

Plaintiff had the RFC to perform light work with no use of either lower extremity for pushing and pulling including use of foot controls, only occasional climbing ramps and stairs, and no climbing ropes, ladders, or scaffolds; he could perform simple repetitive tasks in a low stress environment with minimal changes in the workplace setting and no more than occasional contact with the general public (R. 16).

Plaintiff was unable to perform his past work (R. 18) and had no transferable skills (R. 16, 19). Although Plaintiff's limitations precluded him from doing the full range of light work, using Medical-Vocational Rule 201.21 as a guideline and relying on the VE's testimony, the ALJ concluded that Plaintiff was not disabled (R. 19).

## II. ANALYSIS

### A. Standards of Review

Plaintiff filed this complaint *pro se*. The Supreme Court has instructed courts to hold *pro se* complaints to less stringent standards than pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972). Thus, the allegations in this *pro se* complaint and subsequent submissions of Plaintiff were construed liberally, and the record carefully reviewed on his behalf.

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as

"[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### B. <u>Factual Analysis</u>

In his complaint, Plaintiff requested that he would like to review the transcript and present more medical information that would state the severity of his injury (Dkt. #1, p. 1). After recounting his history of pain, which was consistent with his testimony at his administrative hearing, Plaintiff presented four mistakes that he found in the ALJ's decision.

(1) the ALJ stated that Plaintiff was able to lift a Styrofoam cup [R. 14], whereas he was only able to do so with great difficulty; (2) Plaintiff's hypertension is not under control, contrary to the ALJ's assertion [referring to R. 15]; (3) Plaintiff does not have any mental impairments [referring to R. 15]; and (4) although Plaintiff does laundry, shops, and has sex, he will be in pain for a few days afterwards (Dkt. #1, pp. 1-2).

#### *New Medical Evidence*

The new medical evidence offered by Plaintiff can not be considered for a substantial evidence review of the ALJ's decision, because the evidence was not before the ALJ when he rendered the decision of the Commissioner. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). Yet, the new evidence can be considered to determine whether this case should be remanded in order to review the new evidence. 42 U.S.C. § 405(g).

The case may only be remanded to review the new evidence if there is a showing that the new evidence is material and there is good cause for failure to incorporate the evidence into the prior proceeding. 42 U.S.C. § 405(g); *See Cotton*, 2 F.3d at 696; *Cline v. Commissioner of Social Security*, 96 F.3d 146, 149 (6th Cir. 1996); *Wyatt*, 974 F.2d at 685.

In order for new evidence to be considered material the Plaintiff must demonstrate that there is a reasonable possibility that the Commissioner would have reached a different disposition of the disability claim if presented with the evidence. *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).[5] The evidence consists of undated information about medications Plaintiff was prescribed at Hurley Medical Center, a copy of a check Plaintiff received from Vista Center for helping during the summer and the results of a March 8, 2006, echocardiogram which shows a borderline dilatation of the left

---

[5] In *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988), the Sixth Circuit discusses the materiality standard of §405(g):

> In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. *See Caroll v. Califano*, 619 F.2d 1157, 1962 (6th Cir. 1980); *see also Ward v. Schweiker*, 686 F.2d 762, 764-65 (9th Cir. 1982); *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).

865 F.2d at 711. It is clear from reading *Sizemore* that the issue of the definition of "materiality" was not before the Sixth Circuit in that case. It also appears that the Sixth Circuit in *Sizemore* misstates the actual law in this and other circuits. None of the cases cited support the proposition that the materiality standard requires that there must be a "reasonable probability" of a different outcome. The case law focusing on this specific issue makes it clear that a lower standard of "reasonable possibility," and not "reasonable probability" applies for considering the materiality standard under 42 U.S.C. § 405(g). *See Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981) ("Thus we hold that a remand to the Secretary is not justified if there is no reasonable possibility that it would have changed the outcome of the Secretary's determination."); *Godsey v. Bowen*, 832 F.2d 443, 444 (7th Cir. 1987); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987); *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987); *Booz v. Secretary*, 734 F.2d 1378, 1380-81 (9th Cir. 1984); *Dorsey v. Heckler*, 702 F.2d 597 (5th Cir. 1983).

ventricle, normal left ventricular systolic function consistent with an ejection fraction of 55%, mild hypokinesis of the anterior septal segment and borderline concentric left ventricular hypertrophy.  In conjunction with the fact that Plaintiff makes no argument that this evidence is material, a review of the evidence suggests that Plaintiff has not met his burden of demonstrating that there is a reasonable possibility that the Commissioner would have reached a different disposition of the disability claim if presented with the evidence

Plaintiff must also show there is good cause for his failure to incorporate the evidence in to the prior proceeding.  *See Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, (6th Cir. 1984).  Plaintiff makes no attempt to demonstrate good cause.  Because Plaintiff has failed to demonstrate that the new evidence is material and that there was good cause for not presenting the evidence previously, remand for the review of new medical evidence is not appropriate.

### *The Commissioner's Alleged Mistakes*

In his complaint, Plaintiff points out four mistakes in the ALJ's decision, but does not explain how these relate to the relief requested, nor provide much in the way of support for a contrary finding.  It is well settled law that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).  Because Plaintiff makes no attempt at arguing that the mistakes he points out had any affect on his RFC or the ALJ's decision, Plaintiff's argument is meritless.

Furthermore, even an extremely liberal reading of Plaintiff's *pro se* complaint, does not provide guidance as to how the alleged mistakes are relevant, or how fixing the mistakes would lead to a different outcome.

Most of the alleged mistakes involved Plaintiff's testimony regarding his limitations. Yet, a review of the record demonstrated that Plaintiff's subjective testimony was properly discredited by the ALJ.

Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence (20 C.F.R. 404.1529(a))." The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredited a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings but rather they must be specific. The ALJ must say more than the testimony is not credible. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Id*. at 1039.

Plaintiff does not provide an argument for restoring his credibility and the ALJ had substantial evidence to discredit Plaintiff's subjective testimony. He found the "intensity, persistence and functionally limiting effects" of the symptoms alleged by Plaintiff not fully consistent with the objective medical evidence (R. 16). The ALJ went on to point out that, "[a]lthough, the claimant alleges disability due to pain in the back, neck, shoulder, elbow, knee, ankle and hip and carpal tunnel syndrome, no physician has currently disabled the claimant or directed claimant to limit his activities" (R.16). Plaintiff does not dispute this assertion. The ALJ also analyzed the Plaintiff's physical capabilities and his daily activities. Finally, he pointed out that the consultative examination performed by Dr. Kovan reported full range of motion in both Plaintiff's upper and lower extremities, no evidence of neurological or orthopedic impairment and no significant limitations in his physical activities. Another fact that, although likely disputed by Plaintiff, was not contradicted by anything in the record.

When read liberally, Plaintiff pointing out the mistakes about the Styrofoam cup and the pain he experiences after normal daily activities could be construed as an argument that he had an upper extremity limitation that was not properly taken into account for his RFC. Yet, Plaintiff's testimony was discredited, there is no legible objective evidence of an upper extremity limitation in the record, and Plaintiff does not provide any evidence to support this argument. Because the only evidence of an upper extremity limitation was the Plaintiff's discredited subjective testimony and the consulting doctor found no limitations, the ALJ had substantial evidence to find no upper extremity limitation.

Plaintiff also points out that contrary to the ALJ's assertion his hypertension is not under control [referring to R. 15]. Yet, Plaintiff fails to point to any evidence in the record to support this assertion. Furthermore, although the medical records indicate that Plaintiff's hypertension

13

was "high" on October 19, 2004 (R. 104), on January 25, 2005 and April 12, 2005 Plaintiff's hypertension was noted as "controlled" (R. 101, 103).  There was no other objective evidence of hypertension, and Plaintiff does not explain how his hypertension affects his ability to work.

Plaintiff also argues against ALJ Christensen's finding that he has mild limitations in mental function [referring to R.15].  This point is in accord with ALJ Christensen's determination that Plaintiff is not mentally disabled.

Because Plaintiff's subjective testimony was properly discredited, the objective medical evidence did not indicate a disability, and the record revealed no evidence of physical limitations beyond those found by ALJ Christensen, there was substantial evidence to support the ALJ's findings and his decision should not be overturned.[6]

## III.    RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

---

[6] Plaintiff also points out that the ALJ was mistaken when he stated that the Plainitff used a cane and that he took Elavil.  A review of the record indicates Plaintiff stated he used a cane if his wrists did not hurt and he was going for a long walk (R. 77).  Plaintiff also stated he took Elavil (R.65, 73).  These arguments were, therefore, not addressed more fully.

1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 5, 2006       s/Steven D. Pepe
Ann Arbor, Michigan      United States Magistrate Judge


CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Janet L. Parker, AUSA, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: James G. Stockard, Jr., 906 Garland, Apt #6, Flint, MI 48503, Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606

     s/James P. Peltier
     Courtroom Deputy Clerk
     U.S. District Court
     600 Church St.
     Flint, MI 48502
     810-341-7850
     pete_peltier@mied.uscourts.gov